IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

THOMAS L. T.,[1]

        Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Case No. 6:18-cv-02210-JR

OPINION AND ORDER

Russo, Magistrate Judge:

       Plaintiff Thomas T. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Title XVI Supplemental Security Income ("SSI") under the Social Security Act ("Act"). All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

In March 2015, plaintiff applied for SSI alleging disability as of April 21, 1993, his date of birth. Tr. 157-61.[2] His application was denied initially and upon reconsideration. Tr. 73, 91. On August 16, 2017, a hearing was held before an Administrative Law Judge ("ALJ"); plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 28-58. On January 10, 2018, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 13-21. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## STATEMENT OF FACTS

Plaintiff was born with prenatal exposure to alcohol and methamphetamine. Tr. 616. Plaintiff lives with his mother, has never worked for any meaningful duration, and spends roughly 8 to 11 hours per day playing videogames. Tr. 35-37. Plaintiff alleges an inability to work due to attention deficit hyperactive disorder, attention deficit disorder, fetal alcohol syndrome, exposure to amphetamines in utero, encopresis, hearing loss, sensory integration disorder, scoliosis, and generalized anxiety disorder. Tr. 59.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations

---

[2] The record before the Court constitutes nearly 800 pages, but with some incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears.

omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. At step one, the Commissioner determines whether a claimant is engaged in substantial gainful activity. Yuckert, 482 U.S. at 140; 20 C.F.R. § 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(c). If the claimant does not have a severe impairment, he is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments [the Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 416.920(f). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner.

At step five, the Commissioner must establish the claimant can perform other work existing in significant numbers in the national or local economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 416.920(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.966.

## THE ALJ'S FINDINGS

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since March 16, 2015, the application date. Tr. 15. At step two, the ALJ concluded plaintiff had the following medically determinable severe impairments: "anxiety disorder and attention deficit hyperactivity disorder (ADHD)." Id. At step three, the ALJ decided that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 16.

The ALJ next resolved plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> He can perform no more than simple, routine tasks. He can tolerate no more than moderate noise levels, as defined in Appendix D, Selected Characteristics of Occupations, 1993 ed. He can tolerate no more than occasional changes in the work setting. He can tolerate no more than occasional contact with coworkers, but he must avoid contact with the general public.

Tr. 17.

At step four, the ALJ found that plaintiff was unable to perform any past relevant work. Tr. 18. At step five, the ALJ concluded, based on the VE's testimony, that there are a significant

number of jobs in the national economy that plaintiff could perform despite his impairments, such as landscape laborer, laundry worker, and automobile detailer. Tr. 20.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) failing to incorporate the findings of the state agency consultants Ben Kessler, Psy.D., and Joshua Boyd, Psy.D., into the RFC, (2) failing to provide specific and legitimate reasons to reject the opinion of Pamela Roman, Ph.D., (3) failing to address the assessment of Mary Bean, Ph.D., and (4) inadequately accounting for the findings of audiologist Kathy Grimwood, M.A. Pl.'s Opening Br. 4-5 (doc. 16). Plaintiff further asserts that this case should be remanded for the immediate payment of benefits "because the record fully supports a determination that plaintiff is disabled, and further proceedings would serve no useful purpose." Id. at 30.

The Commissioner concedes harmful legal error, but only as to the first issue. Def.'s Resp. Br. 5 (doc. 19). The Commissioner argues that further proceedings are warranted because this Court is barred from weighing the findings of the state agency consultants in the first instance, the ALJ's opinion is ambiguous as to his treatment of those findings, and the record as a whole creates "serious doubt" that plaintiff is actually disabled. Id. at 5-10.

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The decision turns on the utility of further proceedings. Id. at 1179. A remand for an award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest

Page 5 – OPINION AND ORDER

uncertainty" concerning disability. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099-100 (9th Cir. 2014).

First, as addressed above, it is undisputed the ALJ erred as to the opinions of Drs. Kessler and Boyd. An independent review of the record also reveals that the ALJ erred in weighing the medical assessments of Dr. Bean, Dr. Roman, and Ms. Grimwood.

In June 2013, Dr. Bean performed a psychological/educational evaluation on plaintiff after he was referred by his vocational rehabilitation counselor. Tr. 550. Dr. Bean's report consists of medical and social histories, as reported by plaintiff and his mother, as well as three objective tests. Tr. 550-54. The results of the objective tests are expressed in two sections: "Major Findings" and "Recommendations." Tr. 555-56. In the Major Findings section, Dr. Bean noted that, while plaintiff's "intellectual ability is best estimated at falling in the average range," his performance indicated "attention and concentration problems." Tr. 555. Dr. Bean also wrote that plaintiff had "limited skills" for managing the anxiety provoked by new social situations besides "avoidance." Tr. 556. In the Recommendations section, Dr. Bean concluded plaintiff "likely needs frequent and ongoing supervision to begin and carry through with work-related tasks." Tr. 557. The ALJ did not weigh or meaningfully address this relevant and probative medical evidence, and therefore erroneously rejected it. Tr. 15-20; see also Garrison v. Colvin, 759 F.3d 995, 1012-13 (9th Cir. 2014) ("[W]here an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs.").

In June 2015, Dr. Roman performed a psychodiagnostics assessment on plaintiff after he was referred by the Oregon Department of Human Services. Tr. 615. Dr. Roman's assessment consisted of a limited review of medical records, a clinical interview, and five objective tests. Tr.

615. Dr. Roman concluded that plaintiff suffered from ADHD and social anxiety disorder. Tr. 620. In the narrative portion of her report, Dr. Roman opined that, "[g]iven [plaintiff's] current presentation of social anxiety he would be unable to maintain attention and concentration throughout a normal work week and work day without decompensating and distracting others." Tr. 621.

The ALJ provided two reasons for rejecting Dr. Roman's opinion: it conflicted with that of the state agency consultants and "there is no evidence [plaintiff] would decompensate in a job setting." Tr. 18. As a preliminary matter, any incongruency between the state agency consultants' opinions and that of Dr. Roman is not a legally sufficient reason to reject Dr. Roman's report. See Ryan v. Comm'r Soc. Sec., 528 F.3d 1194, 1198-1202 (9th Cir. 2008) (contrary opinion of a non-examining doctor was alone insufficient to reject the opinion of an examining doctor).

The second reason given by the ALJ, although potentially legally valid, is not supported by substantial evidence. Dr. Roman herself concluded after administering five objective tests that plaintiff "would be unable to maintain attention and concentration throughout a normal work week and workday without decompensating and distracting others" given his current levels of social anxiety. Tr. 621. Plaintiff also scored "below average" on the Wechsler Memory Scale, which evaluates mental control, and in the fifth percentile on the Wechsler Adult Intelligence Scale, placing him in the borderline range. Tr. 619. Finally, Dr. Roman found that plaintiff "does meet criteria for social anxiety disorder," is "interpersonally . . . avoidant," and would have problems understanding and remembering complicated instructions. Tr. 620-21.

Dr. Roman's objective findings and conclusions are consistent with Dr. Bean's opinion. Moreover, the one brief instance in which plaintiff was gainfully employed ended in an anxiety

attack after only two and a half weeks. Tr. 34, 477. Accordingly, the ALJ's assertion that Dr. Roman's findings are less reliable because there is "no evidence [plaintiff] would decompensate in a job setting" is not born out by the record.

In July 2013, Ms. Grimwood conducted a central auditory processing evaluation on plaintiff. Tr. 559. Ms. Grimwood employed seven objective tests, which she then interpreted in the form of work-related recommendations. Tr. 560-63. Ms. Grimwood concluded that, while plaintiff's hearing was normal, he did "exhibit global auditory processing problems that will interfere with his communication and interaction with his environment (especially socially and vocationally)." Tr. 562. As a result, Ms. Grimwood opined that plaintiff "is going to work best in an environment with low levels of competing noise." Tr. 563. Amongst her recommendations, Ms. Grimwood noted specifically that plaintiff "will have difficulty working in an environment with an overhead PA or intercom system." Tr. 562.

The ALJ purported to fully credit Ms. Grimwood's opinion, but proceeded to focus solely on plaintiff's hearing acuity. Tr. 19. Accordingly, the ALJ's RFC, in relevant part, only limited plaintiff to work involving moderate noise levels. Tr. 49-50. As such, the ALJ erroneously conflated plaintiff's general ability to hear with an ability to adequately process sound. Ms. Grimwood's assessment makes clear, however, that these are two discrete functional capacities, the former indicative of no or minimal work-place restrictions, and the latter indicative of a need for a work environment with low levels of competing noise and no overhead PA or intercom system. Tr. 560-62. In short, Ms. Grimwood's finding related to plaintiff's audio-processing disorder cannot be reconciled with the ALJ's assertion that plaintiff could work in an environment with a moderate noise level. Accordingly, the ALJ committed harmful error in regard to all issues raised by plaintiff.

Further proceedings would nonetheless be useful in this case because the record is ambiguous as to plaintiff's functional abilities. On the one hand, plaintiff has endorsed an inability to tolerate background noise, and Ms. Grimwood's opinion suggests plaintiff cannot easily transition between foreground and background sounds. Tr. 44, 560-63. On the other hand, plaintiff testified that his "usual" routine involves playing video games on his Xbox while simultaneously "watch[ing] Netflix or Hulu" on an iPad nearby, describing the videos as "[j]ust background noise" to "look over at . . . when [he] hear[s] something funny." Tr. 38, 40.

Additionally, the progress notes from plaintiff's attempt at vocational rehabilitation do not evince an incapacity to build job skills; instead, the vocational rehabilitation counselors observed plaintiff to perform competently during the classes he attended. Tr. 581-85. These notes make clear that plaintiff's largest issue in completing vocational rehabilitation was simply his lack of attendance. Id. This evidence is consistent with Dr. Bean's denotation that plaintiff "is emotionally immature and has limited insight into his emotional state," and that plaintiff's mother has "enabled [his] failure to participate in normal separation and individuation activities associated with transitioning into independent adulthood." Tr. 556.

Treatment notes from plaintiff's visits with his primary care physician show plaintiff was consistently medicated for ADHD and anxiety in recent years. Tr. 586-602. Yet these treatment notes also suggest plaintiff's disposition and psychiatric state was normal, outside of a single instance in which he was observed with a "blunted affect." Id. Likewise, plaintiff was able to graduate high school without any special education services. Tr. 42-43.

Finally, there is a factual discrepancy regarding the extent of plaintiff's participation during the two-year period he was registered to volunteer at Food for Lane County. Def's. Resp. Br. 15 (doc. 19); Pl.'s Reply. Br. 14 (doc. 20). The Commissioner and the ALJ construed

plaintiff as volunteering regularly during this period, whereas plaintiff casts doubt on that claim. Id.; Tr. 19.

Considering these ambiguities and conflicts, there is more than a "slight uncertainty" plaintiff is disabled such that further proceedings are required to resolve this case. Upon remand, the ALJ must review the entire record and reconsider the medical evidence, and, if necessary, reform plaintiff's RFC and obtain additional VE testimony. Moreover, given the remote alleged onset date, coupled with the complex and longstanding nature of plaintiff's impairments, consultation with a medical expert is warranted upon remand.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 19th day of February, 2020.

/s/ Jolie A. Russo

Jolie A. Russo
United States Magistrate Judge